## BOWMAN v. ROBB.

Where the written obligation of two parties, which concluded with the words, "*witness our hands and seals*," had but one seal, which was affixed to his name by the party who drew and *first* executed the same; and nearly *opposite to this seal* the other party signed his name; *it was held*, that the obligation, on its face, furnished intrinsic evidence for the jury, that the party last signing it had adopted the seal as it stood upon the paper.

IN error from the Common Pleas of Lycoming county.

*July* 26. This was an action of debt on two written contracts, or obligations, given by Orrin Forsyth and Joshua Bowman, to John Robb, and each of which was signed by them, but sealed with one seal only. The action was against both; but as process was not served on Forsyth, he did not appear.

The defendant pleaded *non est factum*, *non assumpsit*, statute of limitations and payment, &c. The case was tried at a special court, held by WOODWARD, P. J., at Williamsport.

At the trial, the plaintiff called George F. Boal to prove the signatures of the parties to the obligation on which the action was founded. He testified that he was acquainted with the handwriting of Orrin Forsyth and Joshua Bowman; that he had seen them write frequently; that he believed their names, as signed to the notes, to be their own proper signatures; but that he was not present when the notes were executed. The admission of the notes in evidence was then objected to by the defendant; but, at the suggestion of the court, he withdrew his objection *at that time;* when the notes, of which the following are copies, were given in evidence.

$75 00                               *Muncy, May* 4, 1833.

One year after date, we promise to pay to the order of John Robb, or assigns, seventy-five dollars, without defalcation, for value received. Witness our hands and seals, with lawful interest.

ORRIN FORSYTH.

L.S.

JOSHUA BOWMAN.

$75 00                               *Muncy, May* 4, 1833.

One year after date, we promise to pay to the order of John Robb, or assigns, seventy-five dollars, without defalcation, for value received. Witness our hands and seals, with lawful interest.

ORRIN FORSYTH.

L.S.

JOSHUA BOWMAN.

The defendant gave in evidence the record of the proceedings in bankruptcy, on the application of Orrin Forsyth, one of the parties to the obligations, for the. benefit of the bankrupt law, the certificate of his discharge as a bankrupt, and releases of Bowman to Forsyth, discharging him from all liability for the debt. He then read in evidence the deposition of the said Orrin Forsyth, which was substantially as follows:

" A short time previous to the 4th of May, 1833, I applied to John Robb, of Muncy township, for a loan of money for one year. I told him that I would give him good security for it. I think the name of Joshua Bowman was mentioned as security. On the 4th day of May, 1833, said Robb came to my store in Muncy, and loaned me three hundred and fifty dollars. I gave him as payment for such loan five notes, four of seventy-five dollars each, and one of fifty dollars, payable one year after date, signed by myself, and Joshua Bowman, as security. When Robb told me the amount he could loan me, I went to my desk, and filled up five printed notes as above stated. I went to the barn of said Bowman to get his name to the notes, and we both went to his house. The notes were presented to him and signed by him. There was no person present except Mr. Bowman. My name was signed to the notes at the time I filled them up at my store. Said Bowman was not present at that time. Mr. Bowman was not at my store at the time of receiving the money or delivering the notes to Robb. If the seal attached to said notes was made by me, it was made at the time I signed the notes, and prior to the signing of them by Mr. Bowman.

" At the time I presented the notes to said Robb he raised an objection to said notes, and remarked there ought to be two seals. I remarked that the notes in all probability would stand but one year ; it would not make any difference ; it would be just as good for six years, as if there were two seals ; he took the notes and left the store.. Two of said notes, amounting to $150, have been paid.

" The notes that I have referred to are the same that are described in the declarations, which still remain unpaid. I never gave John Robb any other notes, sealed or unsealed, with Joshua Bowman as security, or jointly, excepting the five above referred to ; and if the notes upon which Mr. Bowman is sued in these cases are genuine, they are three of the said five notes. Mr. Bowman put no scroll around the printed seals.

" Mr. Bowman said nothing about adopting the seals as his, nor did he authorize me to deliver the notes to Mr. Robb as sealed instruments by him."

The court (WOODWARD, P. J.) charged the jury as follows:

"This action is founded on two promissory notes, signed by Orrin Forsyth and Joshua Bowman, and sealed with only one seal. Forsyth was sued with Bowman, but was not served with the process, and does not appear. The issue is between Robb and Bowman. The defence is that the seal which appears on the paper was the seal of Forsyth, and not of Bowman, and that the plaintiff has therefore joined him improperly with Forsyth in the suit, has improperly declared against him as for a specialty, and moreover is barred by the statute of limitations, the debt being as to Bowman a simple contract debt. The question is, did Bowman adopt the seal as his seal? This is a question for the jury. It is not denied that several persons may adopt one seal, and make it the seal of each of themselves, and so undoubtedly are the authorities; but it is said there is no evidence here of such adoption by Bowman.

"In deciding this controversy the jury should have regard to the reasonable presumptions that arise out of the transaction itself. The notes are joint on their face, and contain the words 'Witness our hands and seals.' It has been said in the argument, on the authority of Taylor v. Glaser, 2 Serg. & Rawle, 502, that these words afford no presumption in aid of a seal. Undoubtedly they do not supply a seal. An instrument in which they occur is not a specialty, unless there be a seal, and on the other hand an instrument to which a seal has been affixed is a specialty, though these words be not used in the body of it. But when the words are used by two parties, in their joint note, and they write their names opposite one seal, what do they import? In such case they may be referred to, as some ground for presuming, that both of the signers of the instrument intended the one seal to bind them. In the case of Talbot and Hodson, 7 Taunt. 251, Ch. J. Gibbs used this language: 'I considered that the circumstance that the defendant had written her name opposite to the seal on an instrument, bearing on its face a declaration that it was sealed with her seal, was some evidence to go to the jury of a sealing and delivery by her.' So we say in the case before us. Bowman having written his name opposite a seal, on an instrument, bearing on its face a declaration that it was sealed by him, the fact is in its nature evidence to go to the jury, for what it is worth.

"There are other circumstances worthy of attention, as affording, in some degree, a presumption that the one seal belongs to both parties. Both names are opposite the circular flourish, one above and the other below the horizontal line drawn there as the place of

signature; but Forsyth's name is farther above that line than Bowman's is below it, and besides, it appears that there was no room for two seals. The letters L.S. printed on the paper, and the flourish around them, occupy all the space that was left for a seal.

" Now if the reasonable presumption be that both Forsyth and Bowman adopted the seal on each note, and there be nothing in the case to countervail this presumption, it results that this is sealed paper as to Bowman as well as Forsyth; that the action was well brought against them jointly; that the plaintiff's declaration properly describes the notes as sealed notes, and that the statute of limitations has no application—in a word, that the plaintiff is entitled to a verdict.

" But it is said the presumption which arises out of the transaction is rebutted by the testimony of Forsyth. He drew the note and signed it at his desk, the seal being made, or, more strictly speaking, the place of the seal being marked; and then he went and found Bowman, who wrote his name opposite the flourish, which marks the place of the seal. Was there any thing unusual in this? Instruments are generally sealed before they are signed. The scrivener commonly puts on the seal of a deed before the grantor signs his name; but the adoption of the seal by the grantor is inferred from his signing over against it. Either Forsyth or Bowman had to make the place of the seal, and it was much better that the one who did it should do it before the other signed, than after. But when Forsyth brought the notes back to Robb, he remarked that there ought to have been two seals, and Forsyth replied that they would be paid before six years elapsed, and seals were not material, &c.

" Now as to Robb's opinion, the matter of it was well enough. It would no doubt have been better to have had two seals, in that it would have avoided this very controversy; but he did not undertake to express the legal effect of one seal, nor is there any thing in his reputed remark to show that he did not consider the flourish to be Bowman's seal as well as Forsyth's. Or if the jury should think there was, there certainly was nothing in it to show that Bowman did not consider it as his seal. As to the accuracy of Forsyth's recollection, after the time that has elapsed, and the credit that is due to him, swearing as he does to extricate his surety from a debt, from which he has himself escaped under cover of the bankrupt law and Bowman's release, the jury must judge, and make such allowances as they think proper. If, on the whole, the jury are satisfied that Forsyth is not entitled to the exclusive appropriation of the seals on these notes, and that they belong in

common to him and Bowman, they should give the plaintiff the balance due on the notes. But if they are not satisfied that Bowman adopted the seal as his own, the verdict should be in his favour."

To which opinion the counsel for the defendant excepted; and the jury having returned a verdict for the plaintiff, he took this writ of error :

1. That this joint action of debt as against Bowman cannot be maintained upon the instruments of writing, shown in evidence, and that there is error in the charge of the court, in which it is said, " That the action was well brought against them jointly; that the plaintiff's declaration properly describes the notes as sealed notes, and that the statute of limitations has no application—in a word, that the plaintiff is entitled to a verdict."

2. That there is error in this, that the court said, " The question is, did Bowman adopt the seal as his seal ? This is a question for the jury," there not having been any evidence given before the jury that Bowman did adopt the seal on the notes in question.

3. The court erred in this, that they said, " In deciding this controversy the jury should have regard to the reasonable presumptions that arise out of the transaction itself. The notes are joint on their face and contain the words, ' Witness our hands and seals.' "

4. That there is error in this, that the court said, " But when the words are used by two parties in their joint note, and they write their names opposite one seal, what do they import ? In such a case they may be referred to, as some ground for presuming, that both of the signers of the instrument intended *that one seal* to bind them."

5. That there is error in what the court said in referring to the case of Talbot v. Hodson, 7 Taunt. 251—that case not being similar to the one in controversy.

6. That there is error in this, that the court said, " Bowman having written his name opposite a seal on an instrument, bearing on its face a declaration that it was sealed by him, the fact is in its nature evidence to go to the jury for what it is worth," because the facts of sealing and delivery are taken from the jury and decided by the court, while they are spoken of as left to the jury.

7. That there is error in this: " There are other circumstances worthy of attention, as affording, in some degree, a presumption that the one seal belongs to both parties. Both names are opposite the circular flourish, one above and the other below the horizontal line, drawn there as the place of signature ; but Forsyth's name is

farther above that line than Bowman's is below it, and besides, it is apparent that there was no room for two seals. The letters ' L.S.' printed on the paper, and the flourish around them, occupy all the space that was left for a seal. Now if the reasonable presumption be that both Forsyth and Bowman adopted the seal on each note, and there be nothing in the case to countervail this presumption, it results that this is sealed paper as to Bowman as well as to Forsyth. That the action was well brought against them jointly; that the plaintiff's declaration properly describes the notes as sealed notes, and that the statute of limitations has no application—in a word, that the plaintiff is entitled to a verdict."

8. That there is error in all that the court said to the jury as to the testimony of Orrin Forsyth, and that the most material parts of the said testimony were omitted by the court.

9. That there is error in the whole charge; that assumed facts are asserted by the court, which are not shown in evidence, and being so assumed, are made the basis of the argument of his honour, who took the decision thereof from the jury.

10. That the whole charge is erroneous in this; that although there are some verbal submissions of the facts of the cause to the jury, yet they are in effect decided by the court and taken from the jury.

*Johnson* and *W. C. Ellis*, for plaintiff in error.—The whole charge is based upon the assumption, that in a case like the present all the proof that is necessary is that of the signatures of both parties to the instruments. But we contend that the plaintiff must do more; that he must prove the fact of sealing by Bowman and Forsyth, and the delivery, by both, of the papers, as their specialties; and that as no such proof was given, and nothing but the signatures proved, the court should have charged that the plaintiff had failed to make out such a case as entitled him to a verdict.

There are only three things essentially necessary to the making a good obligation, viz.: writing in paper or parchment, sealing, and delivery; but it hath been adjudged not to be necessary that the obligor should sign or subscribe his name; 7 Bacon's Abr., *Obligation*, C. 243.

Neither a date, nor, at common law, even the signature of the party, is essential to the validity of an instrument as a deed; but neither the sealing nor delivery can be dispensed with; 3 Chitty on Contracts, 6th Am. ed.; 1 Phillips' Evidence, 466.

But in this case the court below have reversed the rule, and made

the signing the most material requisite, from which alone is to be inferred the common-law requisite of sealing. If this is true at all, it can only be so in the case of one party and one seal; or in the case of as many seals as there are parties. For every obligor must have his several and distinct seal, and a separate seal for every name must appear, unless there is proof *aliunde* the obligation, that the several obligors consented to have but one seal, and that each of them adopted and delivered it as his seal.

Any number of parties may use the same seal; Shep. Touch, ch. 4, 55; Com. Dig. tit. *Fait*, A, 2.

If there be twenty to seal one deed, and all seal upon one piece of wax and with one seal, yet if they make *distinct and several* prints, this is a sufficient sealing, and the deed is good; Shep. Touch. 55; 1 Phillips on Evidence, 467, 4th Am. ed.

In the case of Ball *v.* Dunsterville et al., 4 T. R. 314, citing from Sir W. Jones, 268, Lord Lovelace's case, it was said, "if one of the officers of the forest put one seal to the rolls *by assent of all* the verderers, and other officers, it is as good as if every one had put his several seal; as in case divers men enter into an obligation, and *they all consent*, and set but one seal to it, it is a good obligation of them all."

These authorities clearly show that the assent must be proved, and cannot be inferred.

Twenty men may seal with *one seal upon one piece of wax*, only, and that should serve for them all, *if they all laid their hands upon the seal;* but the other two barons held that though they might all seal a deed with *one seal*, yet it must be *upon several pieces of wax;* Warren *v.* Lynch, 5 Johns. Rep. 246.

The unavoidable inference from all these authorities is, that it must be proved beyond question that both parties sealed these instruments; and the question arises, was the court below right in its opinion that the sealing might be inferred from the proof of signature of both Bowman and Forsyth, taken in connection with the words used. They also cited Trasher *v.* Everhart, 3 Gill & Johns. 234; Perkins on Conveyancing, sec. 120; Taylor *v.* Glaser, 2 Serg. & Rawle, 502.

Although the intention is manifest to seal, yet unless it is done, the instrument shall fail as an obligation. And no inference in a case where the question is, sealed or not, can be drawn from the words used, or the form of the attestation. In this case the question was not only, did Bowman seal, but were they the joint obligations of Forsyth and Bowman? And although they were drawn up

by Forsyth, and intended by him to be sealed by Bowman, the inference is that Bowman refused to seal, inasmuch as there is only Forsyth's seal attached to them, appropriated by him, as he himself says, before they were shown to Bowman.

Whether an instrument be under seal or not, is a question of law, to be solved by the court, from the inspection of the paper itself; Duncan v. Duncan, 1 Watts, 322.

In using even a scroll for a seal, it would seem to be proper, or at least prudent, not to depart from the common form which is generally used in making it, so that no possible doubt may be raised of its having been intended for a seal.

Thus it seems that in this state the relaxation of the law extends only to the manner of making seals, but in all other respects the common-law principle prevails. And the mode known to and recognised by the law, and adopted and pursued from time immemorial, has been to have as many seals as there are parties. From all which it results, that the court erred in the principles of law, as laid down by it to the jury; and it should have charged the jury that the plaintiff had failed to prove a joint contract against Forsyth and Bowman, and therefore could not recover.

The charge gives a partial statement of the evidence of Orrin Forsyth, while that part of it which strongly rebuts all the presumptions upon which his honour lays so much stress is omitted altogether.

*Armstrong*, contrà.—One person might always use another's seal, both in the English and in the Roman law. It is not requisite that there be for every grantor named in a deed a several piece of wax; for one piece of wax may serve for all the grantors, if every one put his seal on the same piece of wax. Twenty men may seal with one seal upon one piece of wax only, and that should serve for them all if they laid their hands upon the seal; Warren v. Lynch, 5 Johns. Rep. 246.

The signing of a deed is the material part of the execution: the seal has become a mere matter of form, and a written or ink seal is good; McDill v. McDill, 1 Dall. 63.

If A. execute a deed for himself and partner, by the authority of his partner and in his presence, it is a good execution (for both) though only sealed by one; Ball v. Dunsterville, 4 Term Rep. 313.

2 Greenleaf's Ev. 244, § 296, " In regard to sealing where there are several obligors or grantors, it is sufficient if there be several impressions, though there be but one piece of wax." *Note.* " If a

bond be executed by a private agent of several obligors, one seal is sufficient." Martin v. Dorch, 1 Stew. 479.

A seal made with the flourish of a pen is sufficient; and in proof of handwriting, the jury may presume the sealing and delivery; Long v. Ramsey, 1 Serg. & Rawle, 72.

In Kentucky, (where a scrawl is substituted for a seal,) it has been held, that if there be a scrawl, thus, "G. B. [L. S.]" opposite the name of one of the makers of a note signed by two persons, though there be none opposite the other, the court cannot upon inspection pronounce that the instrument was not sealed by both. And this, though it said, "witness *my* hand and seal;" 4 Phill. Ev. 1280, note 885, p. 467.

If actually sealed and delivered, it is a specialty, although no mention be made of it in the body of the note; Taylor v. Glaser, 2 Serg. & Rawle, 502.

It has always been held that one piece of wax may serve for several grantors, and that another person may seal for the grantor; Mackey v. Bloodgood, 9 Johns. Rep. 285.

PER CURIAM.—There were actually two seals on the face of each note—the one made by a printed stamp, and the other by an exterior circumflex of a pen. But even if that were not so, there was intrinsic evidence that Bowman had adopted the seal as it stood upon the paper, and the jury might possibly have disregarded the extrinsic evidence, had the two been incompatible. Let the judgment be affirmed for the reasons given in the charge.